## SWORN STATEMENT OF MARIA H. SANDOVAL
## SUBMITTED ON BEHALF OF LUIS ZAYAS GOMEZ
## AND IN SUPPORT OF HIS PETITION
## FILED PURSUANT TO 28 U.S.C. SECTION 2255

I, Maria H. Sandoval do hereby swear under penalty of perjury and pursuant to 28 U.S.C. Section 1746 that the following statements are true and correct and made to the best of my recollection:

1. In 1999, Mr. Luis Zayas Gomez retained undersigned counsel to represent him as his attorney in Crim No. 99-264 (SEC) filed before the federal court for the District of Puerto Rico.

2. Mr. Zayas is a paraplegic. At the time of his arrest and prosecution by federal officials, he had no sensation from his nipples to his toes. He had sensation in his upper chest and arms. Today, he continues in the same condition. He is confined to a wheelchair and needs assistance to take care of his basic needs including moving his bowels. He use a catheter to urinate and relies on others for assistance to bathe and to attend to his personal hygiene.

3. Mr. Zayas experienced medical problems upon his arrest by the federal government and incarceration at MDC-Guaynabo. He was granted bail pending trial for this reason because it was determined that MDC-Guaynabo could not attend to his specialized medical needs. When Mr. Zayas pled guilty, the government did not insist on his immediate incarceration pending sentence. The parties agreed that bail would be continued in relation to his federal case pending sentence.

4. On January 24, 2001, in Crim . No KSC95G0538-0539, the Superior Court For the Commonwealth of Puerto Rico sentenced Mr. Zayas to incarceration for violating an order of probation imposed on Mr. Zayas by the same court. The Superior Court determined that Mr.

Zayas' arrest by federal officials and subsequent prosecution in Crim No. 99-264(SEC) constituted a violation of the order of probation previously imposed on Mr. Zayas. Unlike federal officials, the Commonwealth, on January 24, 2001, ordered Mr. Zayas to be immediately removed to the Bayamon Regional Jail where he was eventually placed in the medical unit. When this occurred, Mr. Zayas and his two attorneys, undersigned counsel and Luis "Dominic" Rodriguez who represented Mr. Zayas before the Superior Court, erroneously concluded that his incarceration in Bayamon was being credited by corrections officials towards his federal sentence.

5. Before being sentenced in the federal court, Mr. Zayas Gomez was required to undergo a Pre-Sentence investigation. During the course of said investigation, the U.S. Department of Probation obtained copies of his prior criminal record. At page 5 of the Pre-Sentence Report prepared by the U.S. Department of Probation, reference is made to the order of the Superior Court indicating that his arrest by the federal government constituted a violation of the terms of probation.

6. The PSR noted that Mr. Zayas' probationary period was set to expire on April 17, 2002. The order concluding that Mr. Zayas had violated the order of probation issued on January 24, 2001. As previously stated, on January 24, 2001, Mr. Zayas was removed to the Bayamon Regional Jail.

7. Subsequent to the issuance of this order by the Superior Court, the Honorable Judge Casellas sentenced Mr. Zayas to 78 months of incarceration and to three years of supervised release on May 18, 2001, approximately four months after Mr. Zayas had begun to serve his sentence for violating probation imposed by the Superior Court. Mr. Zayas requested and was denied a downward departure for medical reasons. Additionally, at sentencing the

District Court and the U.S. Department of Probation took into consideration his violation of probation in determining his criminal history. As a direct result of this consideration and because the U.S. Sentencing Guidelines were then obligatory, Mr. Zayas received a harsher sentence under the sentencing guidelines because he was on probation when he was arrested by federal authorities.

8. At his federal sentencing hearing, the District Court recommended that Mr. Zayas be sent to Devens, one of several BOP facilities capable of addressing the specialized medical needs of sentenced federal prisoners.

9. Documents in the possession of the U.S. Marshal's office indicate that Deputy U.S. Marshals promptly filed the appropriate detainer warrants at the Bayamon Regional Jail in relation to Mr. Zayas. The documents reflect that both the Commonwealth and the federal government were aware that Mr. Zayas had a pending federal case. Commonwealth corrections officials became aware that Mr. Zayas had been sentenced on May 18, 2001 because federal prosecutors were required to serve a writ on the Bayamon Regional Jail to produce Mr. Zayas for sentencing in the federal court.

10. During his stay at Devens, Mr. Zayas sent undersigned counsel a copy of a BOP document that constitutes part of Mr. Zayas' BOP file. The document clearly indicates that Mr. Zayas' projected exit date was scheduled for July 2006.

11. In February and March of 2006, Mr. Zayas' family began communicating with undersigned counsel. They indicated that they were worried about Mr. Zayas because officials at Devens had informed Mr. Zayas that they had miscalculated his exit date. As a result of these communications, undersigned counsel began communicating with officials at Devens, specifically, with the Warden and Case Manager Amico.

12.     Undersigned counsel shared several documents with officials at Devens in the hope of clarifying the correct exit date. Counsel sent Devens officials transcripts of the plea and sentencing hearings corresponding to Mr. Zayas' federal case. Undersigned counsel also urged Devens officials to obtain copies of documents in the possession of the U.S. Marshal office in Puerto Rico. On information and belief, BOP officials at Devens obtained copies of said documents. After all this information was exchanged, undersigned counsel received a letter from Case Manager Amico indicating that Mr. Zayas could not be released until 2009.

13.     Undersigned counsel has examined the statutes referred to Mr. Amico's letter. She understands that Mr. Amico is correct and that the BOP has no option except to detain Mr. Zayas until 2009. She also understands that this is so because of an error she committed at sentencing. Counsel understands that she should have asked the federal court to impose sentence under USSG 5G1.3. Under USSG 5G 1.3, Mr. Zayas could have requested that the District Court impose the sentence concurrently or partially concurrent, particularly in this instance, where Mr. Zayas' federal sentence had taken into consideration, to Mr. Zayas detriment, the fact that he had committed the offense while on probation. Counsel could have also asked attorney Luis Rodriguez to make a similar argument before the Superior Court but she failed to do so. These two omissions, in the opinion of undersigned counsel constitute ineffective assistance of counsel.

14.     Undersigned counsel understands that Mr. Zayas has filed a timely petition under 28 U.S.C. 2255 and that this petition is not time-barred for the following significant reason. Mr. Zayas by filing this petition has moved within three months of having been informed that he would not be released in July of 2006. Prior to May 2006, he was consistently informed that he would be released this year. This unexpected change of circumstances as to the official exit date

could not and was not anticipated by BOP officials or Mr. Zayas' attorneys.

15. Undersigned counsel has received information over the years that Mr. Zayas has received adequate medical treatment at Devens. There is no doubt though that his continued incarceration can aggravate his medical condition and exposes him to unnecessary peril. Mr. Zayas is six years older. His condition has not improved. Additionally, further incarceration continues to expose him to perils peculiar to his incarceration. The best example of such a peril is communicated by the following information.

16. At Devens, all inmates are required to iron their clothes. Since Mr. Zayas is able to move his arms, he must iron his clothes. While ironing recently, Mr. Zayas burnt his legs with the vapor of the iron. Since he has no sensation in his legs, he was unaware that the vapor was burning his legs. He was treated for this but there is no guarantee that this and similar accidents will not happen even under optimum supervision.

17. Counsel understands that attorney Juan Ramon Acevedo will enter a Notice of Appearance on behalf of Mr. Zayas.

At San Juan, Puerto Rico this 16th day of August 2006.

*Maria H. Sandoval*

Maria H. Sandoval